1
2
3
4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2024

SEAN F. McAVOY, CLERK

5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

MICHAEL M.,[1]

8                          Plaintiff,

9           v.

10   MARTIN O'MALLEY, Commissioner of
     Social Security,

11                          Defendant.

12
13
14

No.    1:24-cv-03038-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

15      Due to depression, anxiety, attention deficit hyperactivity disorder (ADHD),

16   substance use disorder, post-traumatic stress disorder (PTSD), sleep issues, night

17   terrors, legal blindness in the right eye, an Achilles tendon wound caused by a

18   gunshot, and left fibula fracture, Plaintiff Michael M. claims that he is unable to

19   work fulltime and applied for disability insurance benefits and supplemental

20

21   ───────────────

22   [1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

23   "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the state agency consultants and consultative examiners and improperly formulated an RFC based upon her own non-expert medical assessment, and that the ALJ erred in her consideration of Plaintiff's subjective complaints. As is explained below, the ALJ erred in her consideration of the medical opinions and failed to develop the record properly by obtaining medical expert testimony. This matter is remanded for further proceedings.

## I.    Background

In October 2019, Plaintiff filed an application for benefits under Title 2, and in June 2020, he filed an application for benefits under Title 16, with both claiming disability beginning January 1, 2011,[2] based on the mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Cecilia LaCara held a telephone hearing in October 2022, at which Plaintiff appeared with his representative and testified.[5]  A vocational expert also appeared and testified.[6]

---

[2] This was later amended to January 13, 2013, as noted below.

[3] AR 68-269, 273-281, 331.

[4] AR 78, 88, 98, 113.

[5] AR 39-75.

[6] *Id*.

During the hearing, Plaintiff's attorney requested that the alleged onset date be amended to January 16, 2013.[7]

Plaintiff testified that he went to twelfth grade but that he had special education services from kindergarten through completion of high school.[8] He said that he needed services because he was a slow learner and was hyperactive.[9] He was held back in sixth grade and took Ritalin since he was 5 years old.[10] He did not stay in treatment because of either jail or missing appointments and not wanting to be in public.[11] He said that Ritalin and hydroxyzine worked to make him focused and calmed down, and said he took other medications as well but did not know the names.[12] He said that recently he felt less depressed and that he will try to go out more but might have to return home due to anxiety.[13] He said that he has a hard time getting to appointments or going to the grocery store.[14] He said that because of his ADHD he can't sit still and that he has been a slow learner in school and at

---

[7] AR 17.

[8] AR 46.

[9] AR 47.

[10] *Id.*

[11] *Id.*

[12] AR 47-48.

[13] AR 48.

[14] *Id.*

work.[15] He said that he took medication when in school but that it was frequently switched and never really fully worked.[16] He said he had been taking Ritalin for a month and felt calmer.[17]

Plaintiff said that when he gets depressed and anxious he has outbursts, and that when he is angry he will yell and break things.[18] The medications have not stopped the outbursts but they help him calm down.[19] He said it has been a while since he had explosive anger and that it had been 10 years since he last worked, with the exception of working one single day at a construction job.[20] He said if he had not been let go he could not have continued because there were too many people and he could not learn the job.[21] He said in the past when he could not learn a job he would get embarrassed and walk off the job.[22] He testified that he also lost jobs due to his anger issues and arguing with his bosses.[23] Plaintiff said he can

---

[15] AR 49-50.

[16] AR 50.

[17] *Id.*

[18] AR 51.

[19] *Id.*

[20] AR 52.

[21] AR 53.

[22] AR 53-54.

[23] AR 54.

keep his attention focused for a couple hours and that is a struggle.[24] He reported that his anxiety was high and he was shaking.[25]

Plaintiff said he had been sober for a few months and that he used from December to January after he left treatment at Sundown Ranch but that he became sober in late January.[26] He said that aside from being sober in 2022, he had been sober for about 190 days in 2019 when he was in jail.[27] Plaintiff testified that he had used meth from the time he was 13 or 14 years old and was substituting meth for Ritalin, because it calmed him but it had negative after effects.[28] Plaintiff said he had lost everything because of meth but was currently taking Ritalin and hydroxyzine.[29] He reported that he was recently shot in the ankle in a drive-by shooting and damaged his Achilles tendon and was not walking yet.[30] He was using crutches and was to take physical therapy for the ankle.[31]

---

[24] AR 55.

[25] *Id.*

[26] *Id.*

[27] AR 56-57.

[28] AR 57.

[29] AR 58.

[30] *Id.*

[31] AR 59.

1    Plaintiff testified he was homeless and was trying to get housing through a

2 program that would pay for a hotel room for him.[32] He said that he sometimes

3 stays at the hotel or in a tent by the river, but that since he was shot the hotel

4 owner was lenient in letting him stay there and that the room was a studio.[33] He

5 said that he eats boxed meals and has not grocery shopped more than once a

6 month.[34] Plaintiff stated that he has no drivers license and used to ride a bike but

7 cannot ride one since his injury.[35] He last saw a doctor for his ankle on September

8 2, 2022, at Kadlec and had been told that it would be a long process to heal.[36] When

9 asked by the ALJ why he had not started physical therapy yet, Plaintiff said he did

10 not know he was supposed to have started physical therapy in August.[37]

11

12

13

14

15

16

---

17

[32] AR 60.

18

[33] *Id.*

19

[34] AR 61.

20

[35] *Id.*

21

[36] *Id.*

22

[37] AR 62.

23

DISPOSITIVE ORDER - 6

After the hearing, the ALJ issued a decision denying benefits.[38] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[39] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Howard Platter, MD, and Yondelle Moore, MD, to be unpersuasive.

- The opinions of consultative and reviewing examiners Mark Duris, PhD; Janis Lewis, PhD; R.A. Cline, PsyD; Thomas Genthe, PhD; and Aaron Burdge, PhD, to be unpersuasive.

- The opinions of state agency evaluators Renee Eisenhauer, PhD, and W. Miller Logan, MD, to be unpersuasive.[40]

The ALJ also considered the third-party statement of Plaintiff's mother, Tina M.[41] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through January 16, 2013.

- Plaintiff had not engaged in substantial gainful activity since January 16, 2013, the alleged onset date.

---

[38] AR 14-38 . Per 20 C.F.R. §§ 404.1520(a)-)g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[39] AR 23-28.

[40] AR 27-29.

[41] AR 29.

- Step two: Plaintiff had the following medically determinable severe impairments: Achilles tendon injury/status post gunshot wound, left fibula fracture, depression, anxiety, attention deficit hyperactivity disorder (ADHD), and substance use disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with consideration of Listing 1.21, 1.22, 12.04, 12.06, and 12.11.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  [Plaintiff] can stand and/or walk up to six hours, and sit up to six hours during an eight-hour workday; can frequently operate foot controls with his right foot; can occasionally climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to non-weather related extreme cold, excessive industrial vibration, unprotected heights and hazardous machinery; is limited to simple, routine, and repetitive tasks; can only have occasional changes in the work setting; can only have occasional interaction with the public and with co-workers with no tandem tasks; and can only have occasional interaction with supervisors.

- Step four: Plaintiff is capable of performing past relevant work as an assembler but notes that it is unclear whether the job qualifies as past relevant work.

- Step five: as an alternative finding, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a production

1    assembler (DOT 706.687-010), an assembler, electronics, (DOT

2    729.687-010), and a routing clerk (DOT 222.687-022).[42]

3    Plaintiff timely requested review of the ALJ's decision by the Appeals

4    Council and now this Court.[43]

5    **II.    Standard of Review**

6    The ALJ's decision is reversed "only if it is not supported by substantial

7    evidence or is based on legal error,"[44] and such error impacted the nondisability

8    determination.[45] Substantial evidence is "more than a mere scintilla but less than

9    a preponderance; it is such relevant evidence as a reasonable mind might accept as

10    adequate to support a conclusion."[46]

---

12    [42] AR 20-30.

13    [43] AR 257.

14    [44] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

15    [45] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other*

16    *grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

17    ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

18    nondisability determination").

19    [46] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

20    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

21    court "must consider the entire record as a whole, weighing both the evidence that

22    supports and the evidence that detracts from the Commissioner's conclusion," not

23

DISPOSITIVE ORDER - 9

1

### III.    Analysis

2    Plaintiff seeks relief from the denial of disability on two grounds. He argues

3  the ALJ erred when evaluating the medical opinions and compounded the error by

4  finding all the medical opinions unpersuasive and formulating an RFC with no

5  supporting medical opinion, and that the ALJ also erred in her assessment of

6  Plaintiff's testimony.  As is explained below, the Court concludes that the ALJ

7  consequentially erred in her evaluation of the medical opinion evidence.

8  **A.    Medical Opinion: Plaintiff establishes consequential error**

9    Plaintiff argues the ALJ erred in her evaluation of the medical opinions

10  regarding Plaintiff's mental impairments.[47]  Plaintiff argues that the ALJ failed to

11  consider the consistency of six different medical opinions from five different

12  medical sources who all opined that Plaintiff had marked to severe mental

13  limitations in the ability to perform basic work activities.[48] Plaintiff argues that

14

_____

15  simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

16  143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

17  not indicate that such evidence was not considered[.]").

18  [47] An ALJ must consider and articulate how persuasive she found each medical

19  opinion, including whether the medical opinion was consistent with and supported

20  by the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32

21  F.4th 785, 792 (9th Cir. 2022).

22  [48] ECF No. 8.

23

DISPOSITIVE ORDER - 10

because the state agency psychologists who evaluated his case at the initial and reconsideration level stated there was insufficient evidence in the file to render an opinion, those six opinions were the only opinion evidence in the record regarding the issue.  The Commissioner counter argues that the ALJ properly considered that the medical providers based their opinions on a one-time examination and that Plaintiff's mental status examination during those evaluations generally indicated findings within normal limits.[49]  In addition, the Commissioner argues that the ALJ properly discounted the opinions because they only examined Plaintiff on one occasion and that the ALJ did not err because she resolved ambiguities in the medical record.[50]

1.    <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[51] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[52] Supportability and consistency

---

[49] ECF No. 9.

[50] Id.

[51] 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b).

[52] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

are the most important factors,[53] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[54] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[55] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[56]

2.    Relevant Medical Evidence

Because Plaintiff argues that the ALJ failed to properly assess medical opinion evidence regarding mental impairments, the Court will only address the relevant evidence.

---

[53] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

[54] *Id.* §§ 404.1520c(b)(2);  416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[55] Id.

[56] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

1

a.    _Dr. Duris_

2    On January 16, 2013. Plaintiff was examined by Mark Duris, PhD, at the

3    request of the Washington State Department of Social Services.[57]  Dr. Duris's

4    report includes a psychosocial history, treatment history, mental health treatment

5    history, education and work history, substance use history, mental status

6    examination, and assessment/diagnosis.[58]

7    Plaintiff reported that he was living with his parents but had been homeless

8    and his family did not want anything to do with him; that he had been in and out

9    of jail six to seven times; that he was required to take anger management classes;

10   and that he was trying to get into an inpatient treatment program.[59] Dr. Duris

11   noted that Plaintiff reported a history of addiction, anxiety, depression, anger,

12   ADHD, and learning difficulties that required special education services during

13   most of his school ling.[60] Plaintiff described feelings of worthlessness, feeling

14   overwhelmed, having excessive worry, experiencing racing thoughts, feeling on

15   edge, and making careless mistakes.[61] On mental status examination, Plaintiff was

16   adequately groomed; his mood was euthymic; his affect was normal; his attitude

17

---

18   [57] AR 442-448.

19   [58] _Id._

20   [59] AR 442.

21   [60] _Id._

22   [61] AR 443-444.

23

DISPOSITIVE ORDER - 13

was cooperative; and he had normal thought process and content, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment. [62]

Dr. Duris diagnosed polysubstance dependence; depressive disorder, NOS; anxiety disorder, NOS; intermittent explosive disorder; and ADHD, NOS (Adult) Inattentive type.[63] Dr. Duris opined that Plaintiff would have mild limitations or no limitation in the following: understanding, remembering, and persisting in simple tasks; learning new tasks; making simple work-related decisions; being aware of hazards; and asking simple questions.[64] Dr. Duris further opined that Plaintiff would have moderate limitations in the following: understanding, remembering, and persisting in detailed tasks; performing activities in a schedule, maintaining attendance, and being punctual; performing routine tasks without special supervision; adapting to changes in a work-setting; and setting realistic goals and planning independently.[65] Dr. Duris also opined that Plaintiff would have marked limitations in the following: communicating and performing effectively in a work setting, completing a normal work day or work week without interruption from symptoms, and maintaining appropriate behavior in a work

---

[62] AR 445-446.

[63] AR 444

[64] AR 445.

[65] *Id.*

setting.[66] Dr. Duris opined that Plaintiff's impairments were primarily the result of drug or alcohol use, but did not indicate whether the impairments would persist if Plaintiff were sober for 60 days.[67] Dr. Duris also checked a box that substance abuse treatment was recommended and wrote the following narrative statement: "[Plaintiff] needs to be reviewed for medication management for symptoms noted above.  [Plaintiff] also needs Cognitive Behavioral Therapy (CBT) for helping him to maintain his medications and work towards overcoming residual depressive and anxiety symptoms not addressed through medication alone."[68]

> ### b.    _Dr. Cline_

On June 8, 2016. Plaintiff was examined by R. A. Cline, PsyD, at the request of the Washington State Department of Social Services.[69] Dr. Cline indicated that Plaintiff was minimally groomed and reported worsening depression over the last two years after "losing" his son, with depressive moods lasting a few to two weeks at a time, insomnia, near chronic fatigue and symptoms of anxiety that include exaggerated startle response, intrusive thoughts, and hypervigilance.[70] Plaintiff advised that he stayed at times with his mother but was generally homeless and

---

[66] _Id._

[67] _Id._

[68] _Id._

[69] AR 448-453.

[70] AR 448.

had not had stable housing in the last 3-4 years.[71] Dr. Cline's report includes a psychosocial history, treatment history, mental health treatment history, education and work history,  substance use history, mental status examination, and assessment/diagnosis.[72]

Dr. Cline noted that Plaintiff's symptoms of depression were unclear in severity but met the criteria for major depressive disorder and were compounded by substance use; that his trauma symptoms were severe; that his sleep disturbance was marked with significant insomnia, nightmares, and daytime fatigue; and that Plaintiff's maladaptive personality traits were severe.[73] On mental status examination, Plaintiff was minimally groomed; was cooperative but had trouble sitting still; had a depressed mood; had a slightly flattened affect; had normal thought process and content with no current suicidal intent; was oriented; had abnormalities in perception including paranoia and auditory hallucinations; had discrepancy in his remote and working memory; had a limited fund of knowledge; had fair concentration; had limited ability to think abstractly; and had variable insight and judgment.[74]  Dr. Cline diagnosed Plaintiff with antisocial personality disorder; methamphetamine use disorder, moderate, active; marijuana

---

[71] AR 449.

[72] AR 448-453.

[73] AR 449-450.

[74] AR 451-452.

use disorder, mild, active; heroin/opiate use disorder, in sustained full remission; PTSD, chronic; unspecified depressive disorder (substance induced vs. MDD); and unspecified anxiety related disorder with features of panic disorder and social anxiety disorder.[75]

Dr. Cline opined that Plaintiff would have mild limitations or no limitation in the following: understanding, remembering and persisting in simple tasks; and adapting to changes in a work setting.[76] Dr. Cline further opined that Plaintiff would have moderate limitations in the following: understanding, remembering, and persisting in detailed tasks; learning new tasks; performing routine tasks without special supervision; making simple work-related decisions; being aware of hazards adapting to changes in a work-setting; asking simple questions; communicating effectively in a work setting; and setting realistic goals and planning independently.[77] Dr. Cline also opined that Plaintiff would have marked limitations in the following: performing activities within a schedule, maintaining attendance, and being punctual; maintaining appropriate behavior in a work setting; and completing a normal work day or work week without interruption from symptoms.[78] Dr. Cline opined that Plaintiff's impairments are not primarily the

---

[75] AR 450.

[76] AR 450-451.

[77] *Id.*

[78] *Id.*

1   result of drug use within the last 60 days, and stated that the symptoms would

2   persist despite 60 days of sobriety.[79] Dr. Cline explained that the aftereffects of

3   methamphetamine abuse persist for 2-5 years and recommended that Plaintiff

4   attend a treatment center that would treat his mental health and substance

5   issues.[80]

6           c.       <u>*Dr. Lewis – record review*</u>

7           On June 21, 2016, Janis Lewis, PhD, reviewed the medical opinions of

8   Dr. Duris and Dr. Cline, at the request of the Washington State Department of

9   Social Services.[81] Dr. Lewis opined that Plaintiff would have a marked limitation

10  in the following: performing activities within a schedule, maintaining attendance,

11  and being punctual; maintaining appropriate behavior in a work setting; and

12  completing a normal work day or work week without interruption from

13  symptoms.[82] Dr. Lewis opined that Plaintiff's mental impairments were primarily

14  due to drug use or addiction and that they would persist for at least 60 days after

15  he stopped using substances.[83]

16          d.       <u>*Dr. Genthe - 2019 Examination*</u>

17

---

18  [79] AR 451.

19  [80] *Id.*

20  [81] AR 524-525.

21  [82] AR 525.

22  [83] AR 526.

23

DISPOSITIVE ORDER - 18

On February 19, 2019, Plaintiff was examined by Thomas Genthe, PhD, at the request of the Commissioner.[84] Plaintiff reported that he lived between his parents' residence and his girlfriend's residence and that he did not socialize with family or friends but had no problem getting along with others.[85] Plaintiff denied past hospitalization or counseling, and reported he had taken psychotropic medication but was presently taking none.[86] Plaintiff reported having special education services when in school due to ADD.[87] Plaintiff reported having hobbies such as fishing, hiking, and riding his bike; being able to do household chores; and being able to go shopping for groceries.[88]

On examination, Dr. Genthe noted that Plaintiff was groomed and appeared to be cooperative and have normal speech but that the amount of detail that Plaintiff gave in response to questions was excessive.[89] Plaintiff presented as open and cooperative; had a nervous mood and affect; had normal thought content but a tangential thought process with significant problems getting to the point; was oriented; showed fair perception; and normal memory; was able to follow the

---

[84] AR 793-799.

[85] AR 793.

[86] AR 794.

[87] *Id.*

[88] AR 794-795.

[89] AR 797.

conversation; was able to think abstractly; and had fair insight with poor

judgment.[90]

     Dr. Genthe opined that Plaintiff would have mild limitations or no limitation

in the following: understanding, remembering and persisting in simple tasks; and

adapting to changes in a work setting.[91] Dr. Genthe further opined that Plaintiff

would have moderate limitations in the following: performing activities within a

schedule, maintaining attendance, and being punctual; learning new tasks;

performing routine tasks without special supervision; being aware of hazards; and

setting realistic goals and planning independently.[92] Dr. Genthe also opined that

Plaintiff would have marked limitations in the following: understanding,

remembering, and persisting in detailed tasks; adapting to changes in a routine

work setting; asking simple questions; communicating effectively in a work setting;

maintaining appropriate behavior in a work setting; and completing a normal work

day or work week without interruption from symptoms.[93]  Dr. Genthe opined that

the limitations are not primarily the result of substance use.[94] Dr. Genthe noted

that Plaintiff had a history of clinical depression, ADHD, social phobia, and failure

---

[90] AR 798-799.

[91] AR 796.

[92] *Id.*

[93] *Id.*

[94] AR 797.

to resist impulses.[95] Dr. Genthe noted that Plaintiff's symptoms were not being managed and that his prognosis was guarded, with the expectation that he was unlikely to function adequately until his symptoms were managed more effectively.[96]

   e. <u>Dr. Burdge – record review</u>

  On February 22, 2019, Aaron Burdge, PhD, reviewed the medical opinions of Dr. Duris, Dr. Cline, and Dr. Genthe, at the request of the Washington State Department of Social Services.[97]  Dr. Burdge opined that Plaintiff would have a marked limitation in the following: understanding, remembering, and persisting in detailed tasks; adapting to changes in a routine work setting; asking simple questions; communicating effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal work day or work week without interruption from symptoms.[98] Dr. Burdge opined that Plaintiff's impairments were not primarily the result of substance use.[99]

   f. <u>Dr. Genthe – 2021 Examination</u>

---

[95] *Id.*

[96] *Id.*

[97] AR 518-523.

[98] AR 519.

[99] AR 521.

On January 25, 2021, Thomas Genthe, PhD, examined Plaintiff for a second time at the request of the Commissioner.[100]  The examination was conducted via telephone due to the Covid-19 pandemic.[101]  Dr. Genthe's report includes a psychosocial history, treatment history, mental health treatment history, education and work history, substance use history, mental status examination, and assessment/diagnosis. [102]  Plaintiff reported that he was homeless and had no driver's license.[103] He reported difficulty being around others.[104] Plaintiff was not receiving counseling but had made plans to go to counseling.[105] Plaintiff had last used marijuana 7 months prior, had last used methamphetamines 90 days prior, had last used heroin 3 years prior, and had last used opioids 5 years prior.[106] Plaintiff reported that his daily activities consisted of riding his bike but reported he was able to complete his daily activities.[107]

---

[100] AR 782-790.

[101] AR 787.

[102] AR 782-786.

[103] AR 782.

[104] *Id*.

[105] AR 783.

[106] *Id*.

[107] AR 784.

Plaintiff reported symptoms of depressed mood, emptiness, anhedonia, decreased appetite, isolation, helplessness, and hopelessness.[108]  He reported symptoms of trauma such as nightmares, flashbacks, and hypervigilance.[109] Plaintiff reported a history of panic attacks that were weekly and lasted about ten minutes but were presently not an issue.[110] Plaintiff reported his ADHD became a problem at age 5 and that he had such symptoms as inappropriate anger, fidgetiness, restlessness and difficulty relaxing.[111] He reported aggression that resulted in verbal altercations almost daily and physical altercations about five times a year.[112] Dr. Genthe diagnosed Plaintiff with major depressive disorder, with anxious distress; PTSD; panic disorder; attention-deficit/hyperactivity disorder, combined presentation; intermittent explosive disorder; other specified personality disorder (rule out); cannabis use disorder, in early remission (3 plus months); stimulant use disorder (meth), in early remission (3 plus months); heroin use disorder, in sustained remission (12 plus months); and opioid use disorder (narcotics), in sustained remission (12 plus months).[113]

---

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] AR 786.

1      On mental status examination Plaintiff's speech was normal in rate and

2 inflection but he gave an excessive amount of detail; he appeared to be cooperative

3 and to be doing his best; his mood was "on edge"; his thought process and content

4 was not within normal limits, as he reported a history of anxiety and depression,

5 his thoughts were not goal-directed or future-oriented, and he was lacking in

6 insight; he was oriented; his perception was normal; his memory was not within

7 normal limits, as he could only remember two of four objects and had compromised

8 short-term and long-term memory; his fund of knowledge was limited; his

9 concentration was impaired and he could not follow the conversation; and his

10 insight and judgment was poor.[114]

11      Dr. Genthe opined that Plaintiff would have mild limitations or no limitation

12 in the following: understanding, remembering, and persisting in simple tasks; and

13 making simple work decisions.[115] Dr. Genthe further opined that Plaintiff would

14 have moderate limitations in the following: learning new tasks; performing routine

15 tasks without special supervision; being aware of hazards; and asking simple

16 questions or requesting assistance.[116] Dr. Genthe also opined that Plaintiff would

17 have marked limitations in the following: understanding, remembering, and

18 persisting in detailed tasks; performing activities within a schedule, maintaining

19

20 [114] AR 788-790.

21 [115] AR 786.

22 [116] *Id.*

23

attendance, and being punctual; adapting to changes in a routine work setting; and setting realistic goals and planning independently.[117]  Dr. Genthe opined that Plaintiff would have a severe limitation in the following: communicating effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal work day or work week without interruption from symptoms.[118] Dr. Genthe stated that his opinions were based on behavioral observations and information gained during the clinical interview.[119] Dr. Genthe opined that Plaintiff's mental-health impairments were not primarily the result of a substance disorder and opined that they would still persist following 60 days of sobriety.[120]  Dr. Genthe opined that Plaintiff's prognosis was poor and that he felt an application for SSI was "warranted and appropriate."[121]

g.    *Dr. Eisenhauer*

On September 17, 2020, state agency consultant Renee Eisenhauer, PhD, reviewed Plaintiff's file at the initial level.[122]  Dr. Eisenhauer noted that Plaintiff had the medically determinable impairments of depressive disorder, anxiety

---

[117] AR 786-787.

[118] *Id.*

[119] AR 787.

[120] *Id.*

[121] *Id.*

[122] AR 84-85.

disorder, ADHD, and substance use disorder but stated that there was insufficient evidence in the file to determine Plaintiff's function as of his date last insured.[123] Dr. Eisenhauer stated that there was "insufficient evidence to evaluate the claim."[124]

> h.  _Dr. Logan_

On November 4, 2021, state agency consultant W. Miller Logan, MD, reviewed Plaintiff's file at the reconsideration level.[125]  Dr. Logan also noted that Plaintiff had the medically determinable impairments of depressive disorder, anxiety disorder, ADHD, and substance use disorder but stated that there was insufficient evidence in the file to determine Plaintiff's function as of the date of his date last insured.[126]  He also noted that there was "insufficient evidence to evaluate the claim."[127]

> 3.  Analysis

Plaintiff argues that the ALJ erred by improperly rejecting the medical opinion evidence and formulating an RFC that was not supported by any medical opinion.  The Commissioner argues that the ALJ gave good reasons to discount the

---

[123] AR 84-86.

[124] AR 86.

[125] AR 108.

[126] AR 107.

[127] AR 110.

opinions of the medical sources and that the ALJ properly resolved conflicts in the

record.  The Court disagrees with the Commissioner.  The Court notes that the

medical sources consistently found that Plaintiff had marked limitations and that

the only conflict between the medical source opinions was that two sources opined

that the limitations were the result of substance use, while three of the sources

opined that the limitations would exist in the absence of substance use for more

than 60 days. Overall, the ALJ failed to provide good reasons to discount the

opinions and failed to consider the consistency of the opinions. The Court also

concludes that the ALJ erred in failing to fully develop the case by obtaining

testimony of a medical advisor.

> a.    _The ALJ's consideration of the opinions from Dr. Duris,_
>        _Dr. Lewis, Dr. Cline, and Dr. Genthe_

The ALJ's consideration of the medical opinions was somewhat cursory.  She

considered the medical opinions of these four sources, as well as the opinion of

Dr. Burdge, in one single paragraph finding them all unpersuasive.[128] The ALJ

expressed that Dr. Duris, Dr. Lewis, Dr. Cline, and Dr. Genthe only performed a

one-time examination of Plaintiff at the request of DSHS in connection with his

eligibility for state benefits; that their examination notes do not support extreme

limitations; and that it appears that they relied on Plaintiff's subjective reports.

---

[128] AR 28.

Initially, the Court notes that in the one paragraph analysis, the ALJ fails to consider the consistency factor in any manner.  The regulations are clear that the ALJ is required to consider and articulate her reasoning both as to the supportability factor *and* the consistency factor.[129] The regulations are clear that a proper and thorough analysis of one of the two factors is not enough to overcome the failure to address the second.

Here, as was noted, there is a consistency between the medical opinions as to the fact that Plaintiff suffers from marked limitations in his ability to perform basic work functions, including: performing activities within a schedule, maintaining attendance, and being punctual; adapting to changes in a routine work setting; and setting realistic goals and planning independently.[130]

The Court also notes that the ALJ is incorrect as to Dr. Genthe's examination and opinions, in saying that Dr. Genthe examined Plaintiff in connection with this DSHS eligibility.  Dr. Genthe examined Plaintiff at the request of the Commissioner, for the purpose of assessing his eligibility for the benefits sought herein.  And as to the ALJ's reasoning that Dr. Genthe based his opinions on Plaintiff's self-reports, the report itself refutes such as a finding

---

[129] 20 C.F.R. §§ 404.1520c(b)(2);  416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785.

[130] AR 445, 451, 519, 525, 786, 796.

because Dr. Genthe stated expressly that his opinions were based on his behavioral observations during the clinical interview.[131]

The remaining reasons the ALJ articulated as to the supportability factor are also flawed. The fact that the opinion source only examined Plaintiff on one occasion is certainly a factor that the ALJ can consider in evaluating the persuasiveness of the opinion again other medical source opinions.[132] But the regulations in no way provide that a medical source opinion can be discounted simply for that reason. The fact that the examiners only saw Plaintiff at a one-time examination was not enough on its own to constitute a "good reason" to discount them. Moreover, the ALJ failed to consider that Dr. Genthe examined Plaintiff not once, but twice and was able to see changes in his functioning over a span of two years.

The ALJ's reasoning that the findings from the examiners' mental status examinations showed only "fairly minor abnormalities" is also incorrect.[133] It is true that the findings of Plaintiff's 2013 mental status examination by Dr. Duris was "fairly normal."[134] But when Plaintiff presented to Dr. Cline in 2016, he

---

[131] AR 787.

[132] 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

[133] AR 28.

[134] AR 445-446.

reported a worsening of his condition in the last 2 years.[135]  On examination, Plaintiff was "minimally groomed"; had a depressed mood and flattened affect; had trouble sitting still, had abnormalities in perception including paranoia and auditory hallucinations; had discrepancy in his remote and working memory; had a limited fund of knowledge; had fair concentration; had limited ability to think abstractly; and had variable insight and judgment.[136]  Those are not "minor abnormalities" as described by the ALJ.

Dr. Genthe's examination in 2019 reflected more the "minor" abnormalities as well.  Dr. Genthe noted that Plaintiff's speech was excessive.[137] Plaintiff had a nervous mood and affect; had normal thought content but a tangential thought process with significant problems getting to the point; showed only fair perception; and had only fair insight with poor judgment.[138]

The reasons that the ALJ articulated as to the supportability factor were not legitimate reasons to discount the medical opinions.  The Court concludes that remand is warranted for the ALJ to properly consider the medical opinion evidence both as to the supportability factor and as to the consistency of the medical opinions with each other.

---

[135] AR 448.

[136] AR 451-452.

[137] AR 797.

[138] AR 798-799.

1

### b. *Plaintiff's substance use*

2   As noted, while all opining medical sources opined that Plaintiff had marked

3   limitations, there was an inconsistency as to whether Plaintiff's limitations were

4   primarily the result of substance use.  Dr. Duris opined that Plaintiff's

5   impairments were primarily the result of drug or alcohol use but did not indicate

6   whether the impairments would persist if Plaintiff was sober for 60 days.[139]   The

7   ALJ noted in her decision that Dr. Duris "specifically stated [Plaintiff's]

8   impairments were primarily the result of alcohol or drug use in the last 60 days."[140]

9   But Dr. Cline specifically stated that Plaintiff's impairments are not

10  primarily the result of drug use in the  last 60 days; that the symptoms would

11  persist despite 60 days of sobriety; and that the aftereffects of methamphetamine

12  abuse persist for 2-5 years.[141] The ALJ did not address Dr. Cline's statement.[142] Dr.

13  Genthe also stated that Plaintiff's impairments were not primarily caused by

14  substance use, and the ALJ made no mention of his finding.[143]

15  A true inconsistency exists as to whether Plaintiff's impairments and

16  marked limitations are primarily the result of substance use. A medical expert

17  _____

18  [139] AR 445.

19  [140] AR 26.

20  [141] AR 451.

21  [142] AR 27.

22  [143] AR 27, 797.

23

should have been called to resolve that inconsistency.  Instead of developing the record to obtain such testimony, the ALJ instead formulated her own non-expert assessment of Plaintiff's limitations.  An ALJ is not a qualified medical expert and should not attempt to make her own medical assessment.[144]  The ALJ acknowledged that she had discounted the opinions of all medical sources and then endeavored to fill in the blanks with her own assessment.

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[145] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[146]

The Court concludes that remand is warranted for the ALJ to properly develop the record.

---

[144] *Day v Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

[145] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[146] *Id.* at 1184.

1

    4.   <u>Summary</u>

2

Because the ALJ failed to properly consider the medical opinion evidence

3

and failed to obtain a medical expert opinion as to the issue of substance use, a

4

remand for further proceedings is warranted.

5

**B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

6

Plaintiff argues the ALJ failed to properly his testimony. As discussed above,

7

the ALJ failed to properly consider the medical opinion evidence and failed to

8

properly develop the record.  Because the Court has remanded the case for

9

consideration of the record as a whole, the Court finds this issue is moot.

10

**C.    Remand for Further Proceedings**

11

Plaintiff submits a remand for payment of benefits is warranted. The

12

decision whether to remand a case for additional evidence, or simply to award

13

benefits, is within the discretion of the court."[147] When the court reverses an ALJ's

14

decision for error, the court "ordinarily must remand to the agency for further

15

proceedings."[148]

16

_____

17

18

[147] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

19

20

[148] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595

21

("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

22

775 F.3d 1090, 1099 (9th Cir. 2014).

23

The Court finds that further development is necessary for a proper disability determination. Here, additional medical expert testimony is necessary to resolve the issue of substance use.  Therefore, the ALJ should obtain medical expert testimony, consider the medical opinions as to both the factors of consistency and supportability and make findings at each of the five steps of the sequential evaluation process.  The Court further directs that on remand the case be assigned to a different ALJ.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) before a different ALJ.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of August, 2024.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge